Ms. Glazer. Yes, Your Honor. You may proceed. Thank you. May it please the court. This is a I'm appearing on behalf of the appellants, James LeBlanc, who's the secretary of the Department of Public Safety and Corrections, and Terry Lawson, who had the unfortunate job of calculating the plaintiff's sentence after he was convicted of violating his probation. This is an appeal from the denial of a Rule 12 motion based on qualified immunity. All of the facts at issue at this time are in the plaintiff's amended complaint. And the district judge expressly found that the pleadings contain sufficient facts to overcome the qualified immunity defense. Therefore, the legal question of the sufficiency of the allegations to overcome qualified immunity is properly before you. And it was qualified immunity as to both defendants on both of the claims. The court specifically found that the pleadings were sufficient. And that makes this case very similar to Bradley v. Allstate, which was cited in our briefs, in which the court held that when the entire contract is before the district court, the Court of Appeal is not prohibited from reviewing provisions that weren't specifically pointed out by the by the parties below just because they didn't point it out. And that's the same thing here. The entire complaint, the four corners of the plaintiff's amended complaint, are the facts relied on by the district court and is the pleading before you on a de novo review. So the sufficiency of all of the facts is a question of law that is properly before you. Within that scope, we've got the issue of qualified immunity. Both defendants are accused of violating the plaintiff's First Amendment rights. The facts supporting those three claims are insufficient as a matter of law. If we start with the secretary, the law is clear that in order to hold the supervisory official liable for a failure to implement policies or a failure to train and supervise all three of which are like in a shotgun pleading lodged against the secretary, the plaintiff has to allege and eventually prove deliberate indifference by the secretary. That law is clear. In order to prove deliberate indifference, the plaintiff has to allege and then show that he had notice of a particular defect in the department's policies or in the department's training or in the department's supervision policies. No particular defect in any of those areas has been identified. Instead, the plaintiff lodges broad allegations of a quote-unquote as the pattern of Brady violations that was rejected by the Supreme Court in Connick. The Supreme Court and all the courts applying that law consistently say the pattern of similar constitutional violations requires specifically similar violations. That's just not here. The facts alleged, for example, are that the department had a backlog of over-detention paperwork. There's no allegation here that this plaintiff's a series of backlogs had anything to do with this. It didn't. Similarly, the plaintiff alleges that there's a series of mistakes made in sentence calculations. There's no mistake alleged here either. The plaintiff specifically alleges that Terry Lawson calculated his sentence correctly and then intentionally withheld jail credit. There's no mistake. How this falls into that other set of errors in time computations, it doesn't. Therefore, the plaintiff has not pleaded a pattern of similar constitutional violations sufficient to support a deliberate indifference claim against Secretary LeBlanc. In addition, the plaintiff doesn't plead what Secretary LeBlanc did or did not do in response to that. Now, that's the only issue that the district court said wasn't raised below, and it wasn't raised here either. That is the second part of the qualified immunity defense. It was error for the district court to deny qualified immunity to Secretary LeBlanc without fully considering the two prongs of the analysis. Instead, what she should have done is what she said she would do in the standard of review she cited, which was that if additional facts were necessary, such as the facts regarding the reasonableness of the response to the alleged knowledge, that she would order a Sheltier reply or response to the qualified immunity where additional facts focused specifically on the conduct of the defendant who's accused of violating the Constitution would be pleaded. That wasn't done either. Instead, the district court just denied qualified immunity flat out to the Secretary, subjecting him to discovery and trial based on a very, very vaguely pleaded and very broad claim of overarching constitutional violations over a period of years. As to Terry Lawson, the allegations are... The facts that are pleaded don't support the claims against him. So you've got a series of conclusory allegations, starting with the fundamental conclusory allegation that the plaintiff had a right to be released from custody on the particular date the plaintiff says he was entitled to the release, which was February 4th, 24th, 2017. And the facts do not support that claim at all. Well, you have an allegation that he was supposed to receive credit for some time served in Arkansas.  Yes, Your Honor. And then the further allegation is that he was denied that credit. Isn't that right? That is, yes, that is correct. And so that's a conclusory allegation? No, that's not the conclusory allegation. The conclusory allegation is that he was specifically entitled to release on February 24th, 2017. Well, if he had gotten the credit for time served, that's when he calculates he would have been entitled to release. Is that right? I'm sorry, Your Honor. His argument about when he was entitled to be released is based on his allegation that he was entitled to receive the credit for time served in Arkansas. Isn't that right? That's what he says, yes, Your Honor, but the facts don't support that. All right, so then we have a factual dispute. No, because all of the facts are theirs right now. I mean, there is a specific amount of time that he was in prison in Arkansas that he's claiming he was entitled to credit for. And that's not pleaded, or it is, in which case the math doesn't add up, in which case we can't. Was it that Terry Lawson's withheld all of his Arkansas credit, or was it only some of it? And I mean, how do we as the defense analyze and defend the claim and the reasonableness of Terry Lawson's actions if we don't know exactly what he did? Because based on the phone call with plaintiff's counsel that's in the pleading, Terry Lawson said he gave him 900 and something days of credit. The plaintiff says that didn't include any credit from Arkansas. Right, and it's rule 12, so we have to accept the plaintiff's version as true that that didn't, that he was entitled to more time on the Arkansas. I mean, you might be right that this was done exactly by the book, but it's just, I don't know how we determine that at the pleading stage. I mean, they allege that he didn't get the Arkansas credit that was told to the lawyer in a phone call that the date kept moving around because they were at first giving him credit and then taking it away. So why isn't that at least plausible? And then discovery will flesh out whether you're right or the plaintiff's right about the time. Well, the phone call actually said that he did get Arkansas credit. Well, I'm looking at paragraph 43 of the complaint. On the phone, Mr. Lawson confirmed that Mr. Hicks was only getting 904 days of jail credit. Next paragraph, 44. That number corresponds only to pretrial detention in Louisiana and so accounts for no Arkansas time. I apologize. I say the phone call was giving Arkansas time. I apologize, Judge, that the phone call said he received 904 days of credit. Plaintiff's counsel in the complaint said that did not include Arkansas time. And we take allegations as true. Right, it might be proven to be 100% wrong once everyone's deposed and all that. But you want us to say that that allegation is just false and therefore throw out the case? Say that it's false? No. But say that the facts that supposedly back it up aren't there. I mean, the plaintiff knows when he was in jail and he didn't plead it. And so what's going to happen? So we do discovery with Terry Lawson, and Terry Lawson explains where all the jail credit came from and what all they had to do. And if it's proven that it's false, that the plaintiff was given, as it turns out, way more jail time than he was entitled to. If it's proven, I mean, summary judgment and trial is about what's proven. Rule 12 is about what's- Sure, he's saying he didn't get Arkansas credit. And in fact, they kept moving his date around and giving it and not giving it. But we just don't buy that. That's what we should say? No. What you should say next is what he did, a violation of clearly established law, in order to deny him qualified immunity. Deny, which is what the- Well, counsel, in that regard, would not a key piece of evidence be the allegation that Lawson said, anyone who messes with me gets longer time? Whether that's true or not, whether he ever uttered the words, again, they've been pled, wouldn't that be an operative fact to demonstrate the point that you just made? Partially, yes. And it does. And that was the allegation, is that nobody messed with him, I'm doing air quotes, nobody messed with him until after he had done three of those time comps. And that's why when we go to the First Amendment, the law requires a pleading of a chronology of events. And there were four time computations and two First Amendment protected activities. The ARC was filed afterwards, so that's out. But a motion to correct the sentence was filed before the last time comp, which was granted, and then the sentence was clarified or whatever, a new sentencing record was sent to Lawson, and the sentence was recalculated at that time. But those first three time comps were not done in retaliation for anything, according to the facts in the complaint. And so, there's that. The other question is, if you look at what Lawson's accused of doing, and you take that as to get, how is that action attributable to a pleaded policy of the secretary? And so, with that in mind, what we would suggest is that this court reverse the denial of qualified immunity as to the secretary, and vacate the denial of qualified immunity as to Terry Lawson, and remand for additional fact finding with regard to what Terry Lawson did, so that his qualified immunity can be fully analyzed in light of all of the facts, and not just the allegations. And I've got about 20 seconds left, but I'll save it for rebuttal. Thank you. Thank you, Counsel. Mr. Most? Good morning. May it please the court, William Most, appearing on behalf of Appellee Plaintiff Ellis Hicks. As you heard, this case is about how the state of Louisiana is holding more than 2,000 people per year, every year, past their release dates, for an average of about a month and a half each, and how Appellee Ellis Hicks was one of them. You heard appellant's arguments, but they are for at least three reasons. First, because defendants waived the arguments that they're making here on appeal. Second, because the allegations in the complaint are more than sufficient to state a plausible claim. And third, because this case and this appeal reflects a disrespect for judicial authority and judicial resources. I'll take first the issue of waiver. There is no overlap whatsoever between the arguments appellants made in the district court and the arguments they're making here. They didn't try and make those arguments in their motion to dismiss brief. They didn't file a reply brief. They didn't file a motion for reconsideration. And so the first time that these arguments were heard by us or by any court was in appellant's opening brief on appeal. That's not fair to the district court who never had the opportunity to consider and accept or reject the arguments. And it's a bait and switch to plaintiffs to make entirely new arguments in a new higher court. If the arguments about the sufficiency of the complaint had been made below, perhaps the trial court would have agreed and the complaint could have been amended to clarify. But those arguments were never made there. Now, it's true that there is a narrow set of situations where the waived arguments can be when, for example, they turn on a pure question of law and would be a miscarriage of justice not to hear them. But that's definitely not the case here because this is not the last time that defendants can raise the issue of qualified immunity. As Ms. Glaser asked, her fundamental ask here is for it to be remanded for further factual proceedings, factual investigation to determine whether or not qualified immunity is appropriate. But of course, that's exactly what would happen in the absence of this appeal. We would have continued with discovery and the issue of qualified immunity could have been raised on a motion for summary judgment. So the very thing that appellants are asking this court to order is exactly what would have happened if they didn't file this appeal at all. This appeal is fundamentally unnecessary for that reason. And again, they could also raise the issue of qualified immunity at trial if it hasn't been raised by that point. Second, the allegations in the complaint are more than sufficient to raise a plausible claim for relief. The core facts are the ones that were discussed, that Mr. Hicks' sentence was complete on February 24th, 2018, and that he was actually released two months later on April 25th for an over-detention period of 60 days. And as your honors noted, there was the functional reason why that he was held past his release date, which is that he wasn't getting the judge-ordered credit from Arkansas. And in addition, what makes his fact of over-detention even more plausible is the fact that once Mr. Lawson's conduct was reported to the Department of Corrections General Counsel, Mr. Hicks was released five days later, well before Mr. Lawson had finally calculated his release date to be. So that lends the plausibility. Even if you take away everything else, you've got at the core of it the date we think he was supposed to be released, the date he was actually released, and enough surrounding facts to make it plausible that he was over-detained. Now you agree that as regards LeBlanc, you need to show some deliberate indifference, is that right? Yes, your honor. What do you offer in support of your contention that he was deliberately indifferent to what happened with Mr. Hicks in this case? Yes, so we have three pages of the pattern and practice allegations, which detail Secretary LeBlanc's knowledge starting in 2012. So in 2012, as alleged in the complaint, there was what we what was called a Six Sigma investigation, which found a widespread pattern of over-detention in Louisiana. It found that 2,252 inmates in a single year had been held past their release date for an average of 71.7 days each. What was the, not to interrupt your answer to Judge Graves' question, which I think is very important, on those instances, is there any evidence to suggest that those were intentional or were they just grossly incompetent or negligent in computing these dates? Yes. There's a difference, I think a material difference, for purposes of your pleading, isn't there? Absolutely. So what the Six Sigma investigation found in 2012 was a number of problems that led to all those people being held past their release date. Some of it was it took some period of time for documents to get to the DOC and then it took the DOC quite a long time to process them. That was one issue. There was the backlog issue. There were some over-detentions that weren't totally explained. But that at least puts Secretary LeBlanc on notice in 2012 that they've got a major problem. And in fact, he testified that it was a big problem. And then the failure to cure those problems is what accounts for the deliberate indifference. So in 2017, there was another internal investigation that found a public safety and corrections is some, I'm sure, large bureaucracy. And you understand that you can't correct the problem overnight. So the allegation needs to go, I think, deeper than they had a problem that he knew about, and then it was not corrected at the time of a subsequent audit. For me, the larger question is whether or not he was making some cases, whether or not they were reducing the number of cases where people were being over-detained. What do you say to that? Yes, Judge Graves, I agree with you. I think that is going to be the question for discovery and then for the trier of fact to determine. Was the efforts that were undertaken by Secretary LeBlanc to correct this problem over the seven years after he was notified of it enough to eliminate deliberate indifference? Or was the action, as we allege, the failure to, you know, now I'm going outside the complaint, but there will be quite a lot that would be put forward on both sides by the plaintiff, by the defendant, to argue that the pattern constitutes deliberate indifference. Your allegation is he knew about it and he did nothing. In essence, yes. And the problem continued year after year. And in fact, in some ways got worse. The number of people over-detained by 2019 was substantially larger, on average, than it was in 2012. And we also know that... But isn't that evidence, you have some extensive allegations, as has been mentioned, about the negligence, about maybe even recklessness. How does that match the allegation here that there was intentional retaliation against an problem? Yeah. I think there are... The complaint, in essence, argues in the alternative two explanations for why... For Mr. Lawson's conduct. One is that this was intentional retaliation for the protective First Amendment conduct, which is not just the ARP he filed and not just his pleadings in court, but also the advocacy on behalf of Mr. Hicks by his friends to try and fix it. So that's one possible explanation for Mr. Lawson's conduct. Another possible explanation, which is suggested by his statement in the recorded phone call, is that this is the way Mr. Lawson always does things. That he does... Fundamentally does not believe that a judge has the authority to tell him whether or not to give this jail credit. He said, quote, the judges have no say whatsoever in us applying our time comp laws and that the judge's orders, quote, are not enforced on our side of the street when we do the math. And so that's an indication that this was not just a one-off, but was the way he typically did things. And there's some tension between those and discovery will determine which of those it was, or some hybrid of retaliation and the way he always does things. Perhaps this is the way he does things, but he added some more on to... As retaliation. But it certainly suggests... Do you have allegations of a policy of not giving inmates credit that the judges say they're due? I mean, to me, again, even that's different than, well, there's just a backlog. These cases aren't getting attention. But it seems to me that this matter was getting attention. It was getting attention in a way your client didn't like, because I think he started off with a better date. Then they got attention just in a way that didn't benefit your client. Yeah. I think it is suggested by Mr. Lawson that he fundamentally believes that judge-ordered jail credit, if it doesn't comply with his understanding of Article 880, should not be applied whatever the judges say. And so that is, if not an explicit policy, I mean, it may be a policy. We haven't done discovery to find out. It is at least a suggestion that it's his practice to do so, that he fundamentally believes that if a judge orders it, if it doesn't comply with Mr. Lawson's reading of the law, that it should be rejected. And now that is exactly the opposite of the way it's supposed to happen. The case that's cited on the first page of our complaint, which is Body A v. Louisiana Department of Corrections, addresses exactly this factual scenario and says, if a judge orders the jail credit, regardless of whether the DOC thinks it's right or wrong, the DOC has to implement it as the judge ordered. And so Mr. Lawson just isn't following the law, and it appears that is his typical practice, at least in the way he described it. And so that's enough to at least show a plausible pattern, as alleged, that can constitute a pattern sufficient, perhaps, to hold a superior on notice. I mean, discovery will determine how widespread was this to extend beyond Mr. Lawson, how far up the food chain it goes. But what we do know is, one, we have an extremely widespread pattern of over-detention, and number two, we have a jail official who is saying that his practice is not to give this jail credit, which could explain a chunk of the large pattern of over-detention that is observed and alleged and it's also relevant to note that there isn't actually a dispute about when Mr. Hicks should have been released. So defendants argue vigorously that there isn't sufficient factual allegations to support the February 24th number, but that isn't actually in dispute. As we note in our brief, it was admitted in a request for admission, and it was also admitted by all defendants in their response to the summary judgment, plaintiff summary judgment. Their admission appears on page 450 of the record on appeal. And so it brings us to the question of what is the purpose of this appeal? If defendants agree with the February 24th date, which it seems that they do from their admissions, then it's not clear what this appeal accomplishes, because they understand what plaintiff's claim is against them and they can defend against it. If, however, they disagree and they think that February 24th date is wrong, then they're certainly welcome in the trial court to make that argument, to move to withdraw their admission and to put forward the evidence for why they think a different date is correct. But either way, this appeal does not solve that problem. It doesn't actually provide them with the information they need to defend the case. And of course, we can't resolve that factual question here without discovery or a factual dispute. Well, let me ask you on the DPSC calculation, wasn't the response to the discovery that it called for a legal conclusion, there was an objection at first. Did you pursue that at all to have that resolved one way or the other with the court? No, it is true. They made a form objection saying that the request for admission called for a pure question of law. Now, I don't think that the objection is still on the table as a response from the responding party. That's true. They admitted that February 24th was correct, subject to that objection. I agree. However, they did not raise any objection in their response to the material facts in the response to the motion for summary judgment, page 450 of the record. They're not a party, right? Department of Public Safety and Corrections is a party to the case, but is not a party to this appeal. But the response to the material facts was on behalf of all defendants, including Mr. Lawson and Secretary LeBlanc. And I think it's also worth noting that Secretary LeBlanc is sued in both his official and his individual capacity. And so he is identical to the Department of Public Safety and Corrections in that capacity. And so it appears from the record that this is not actually a disputed issue. And so it raises the question of what is the purpose of this appeal if it's to tinker with the complaint to further substantiate something that the parties don't even disagree about? And so that's why it's really a red herring whether or not there's lots of math in the complaint. It's a bait and switch that this court has in the past said is impermissible. For example, in Leverett v. Louisville Ladder Company, this court said, the court will not allow a party to raise an issue for the first time on appeal merely because the party believes that he might prevail if given the opportunity to try a case again on a different theory. And that's what's happening here. Below what defendants argued was sovereign immunity and the Heck v. Humphrey doctrine. On appeal, they're arguing completely different arguments. They are arguing about whether he was perhaps under detained. They're arguing about the pattern and practice, arguing about First Amendment retaliation. But that doesn't appear at all in their motion to dismiss brief. The words pattern, practice, First Amendment, retaliation, none of those words appear in their briefing below. And so it is a waste of this court's resources to hear an appeal that fundamentally does not resolve a question that is disputed by the parties, that is based entirely on novel issues not raised below. And for that reason, we ask that this court affirm the trial court's ruling. Roboto. Thank you, Your Honor. A couple things. The pleading is a shotgun pleading that contains a single set of facts and a whole bunch of legal theories. And the word alternative or alternatively pled is not found in there. None of the claims are alternatively pled. So the same allegations that supposedly support a First and Fourteenth Amendment against Terry Lawson also support a negligence claim against Terry Lawson and also support a claim for official capacity injunctive relief against the secretary. There is no distinction in the counts in the complaint. Counsel argued that in addition to the protected First Amendment activities of filing motions with the court and filing an ARP, the plaintiff was also retaliated against in violation of his First Amendment rights by virtue of First Amendment activities by other people. The law does not support that. A prisoner can only be retaliated against for his own protected activities. And so that's, again, a well-pleaded fact in the complaint that other people were engaged in First Amendment activities. But as a matter of law, it does not support a First Amendment claim against Terry Lawson for violating the plaintiff's First Amendment rights. And then the allegation that Secretary LeBlanc can be held personally liable for money damages under 1983 due to bad conduct of Terry Lawson is a claim for vicarious liability. There are no facts in the complaint whatsoever that that's a claim in the lawsuit that Secretary LeBlanc knew of Terry Lawson's bad behavior and that he knew of other instances of it and did nothing about it. That's unclaimed. Ms. Glazer, can you respond to his argument that, I guess the argument you're making now, the policy or practice that this didn't extend to the supervisor, that he says that wasn't made below, what's your response? That this particular argument wasn't made below? He's saying heck versus Humphreys was argued below, but you didn't argue no policy or practice. Right. Heck versus Humphrey was the primary argument that the plaintiff is challenging the computation of a sentence which per well-established law is barred by heck. That argument was rejected and is not on appeal. In the motion that the defendants filed, no. The argument about how poorly pleaded the complaint was to support a pattern and practice, whatever claim against the secretary, was not in the motion. However, it was very, very clearly in the district judge's opinion. And if we were to not allow a defendant to appeal the denial of qualified immunity, then such a ruling made ostensibly sua sponte by the district court would be completely insulated from collateral order review by this court in violations of jurisdiction to review such a denial of qualified immunity. And there is no question that judge on page 666 of the opinion, I'm sorry, of the record, Judge Dix specifically found the pleadings to be sufficient to state a pattern and practice claim. And so it is properly preserved for review because the district judge preserved it for review knowing that it is in fact reviewable. And it is a legal question just as the sufficiency of the evidence to support the knowledge part of the deliberate indifference analysis, whether that evidence is sufficient is also a legal question for the Supreme Court in Connick. And also on Connick, the court made it very, very clear that broad allegations of all misdeeds and even broad allegations of things like Brady violations are not sufficient to support a claim against a supervisor. And that's what we have here. There is no allegation whatsoever that Secretary LeBlanc knew of similar constitutional violations to the one allegedly suffered by the plaintiff. And so for that reason, no discovery should be allowed. Thank you. Thank you, counsel. The court will take this matter under advisement. Ms. Glazer, Mr. Moe, you are free to leave. Thank you very much. Thank you. Thank you.